IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-cr-99-RAH |
| | ) | [WO] |
| JUBRY HENRY BLEDSON II | ) | |

## MEMORANDUM OPINION AND ORDER

The Sixth Amendment declares, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. These rights are so vital to the pursuit of justice that this courthouse displays them in its Jury Assembly Room—impressing upon all jurors in criminal trials the urgency of their task. The necessary trial participants are gathered to try this case at this time due to Mr. Jubry Bledson's right to a speedy trial. This trial has been continued four times. Mr. Bledson has waited patiently for his day in court, and that day has arrived.

Unfortunately, the circumstances over the past several months—the ongoing Coronavirus Disease of 2019 (COVID-19) pandemic—now require the Court to address Mr. Bledson's right to a public trial. The Supreme Court of the United States has interpreted the Sixth Amendment and the First Amendment as imposing a presumption that criminal trials, including voir dire, will be open to the public. *Press-Enter. Co. v. Superior Court of Calif., Riverside Cnty.*, 464 U.S. 501, 505 (1984) (recognizing this presumption under the First Amendment); *Waller v.*

*Georgia*, 467 U.S. 39, 46 (1984) (holding, after *Press-Enterprise* was decided, that the "Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public"). Public trial serves the interests of both the defendant and the public by "ensuring that judge and prosecutor carry out their duties responsibly, . . . encourag[ing] witnesses to come forward[,] and discourag[ing] perjury." *Waller*, 467 U.S. at 46. The Court does not take the decision to abridge this constitutional right lightly. But the need to protect the trial participants from exposure to additional persons who may be contagious for COVID-19 and the need to limit the possibility of spreading COVID-19 from trial participants to the broader public, necessitates a *sua sponte* order that jury selection and trial in this case be closed to in-person spectators except for the Defendant's family members. Live video and audio of the trial proceedings will be streamed to a viewing room within the courthouse.

## I.     BACKGROUND

Defendant Bledson has been charged with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Jury selection is set to begin on April 12, 2021, and the jury trial is set to begin on April 19, 2021.

## II.     STANDARD OF REVIEW

The Eleventh Circuit has "recognized a distinction between total closures of proceedings . . . and situations where the courtroom is only partially closed to

spectators." *Judd v. Haley*, 250 F.3d 1308, 1315 (11th Cir. 2001). The Circuit has held that "[w]hen access to the courtroom is retained by some spectators (such as representatives of the press or the defendant's family members), . . . the impact of the closure is not as great, and not as deserving of such a rigorous level of constitutional scrutiny." *Id.* "[I]n the event of a partial closure, a court need merely find a 'substantial' reason for the partial closure, and need not satisfy the elements of the more rigorous *Waller* test." *Id.*

Because the Court will allow the Defendant's family members to observe the proceedings in-person and because the Court will stream live video and audio of the trial proceedings to a viewing room and on the Court's website, it views this closure as a partial, not full, closing of the trial proceedings. Still, if this closure were considered a complete closure, the circumstances must satisfy the test set forth in *Waller v. Georgia*, 467 U.S. 39 (1984). In order to justify closure "[1] the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure." *Id.* at 48.

### III. DISCUSSION

*A. The COVID-19 Pandemic*

The nation and this judicial district have been greatly impacted by the ongoing COVID-19 pandemic. The health and safety of trial participants and the public are overriding interests of the highest order for the Government and for this Court.

The national emergency declared by the President of the United States on March 13, 2020, remains in effect. General Orders have been entered in response to the outbreak of COVID-19 within the Middle District of Alabama, and to the continuing threat to health and safety posed by the outbreak. *See, e.g.*, Order, *In re: Court Operations Under the Exigent Circumstances Created by COVID-19 and Related Coronavirus*, No. 2:20-mc-3910-ECM (M.D. Ala. March 12, 2021), ECF No. 11. These General Orders have acknowledged the unprecedented nature of the public health emergency caused by COVID-19.

The emergency continues in the twelve counties that make up the Northern Division of this District, from which this jury will be assembled. *See* Ala. Dep't of Pub. Health, *Alabama's Covid-19 Risk Indicator Dashboard*, https://alpublichealth.maps.arcgis.com/apps/opsdashboard/index.html#/b585b67ef4074bb2b4443975bf14f77d (last visited, March 24, 2021). The Alabama Department of Public Health lists one of the counties in its very high risk category (Pike), two of the counties in its moderate risk category (Autauga and Lowndes), and nine in its low risk category (Montgomery, Barbour, Bullock, Butler, Chilton, Coosa, Covington, Crenshaw, and Elmore). *Id.* COVID-19 can cause severe illness,

and it poses particularly high risks for older adults and people of any age who have serious underlying medical conditions.  Ctrs. for Disease Control & Prevention, *Things to Know about the COVID-19 Pandemic*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/need-to-know.html   (last visited, March 24, 2021).

Statewide, nearly four hundred thousand Alabamians have been confirmed positive with the virus, over forty seven thousand have been hospitalized, and over ten thousand have died.  Ala. Dep't of Pub. Health, *Alabama's COVID-19 Data and Surveillance Dashboard*, https://alpublichealth.maps.arcgis.com/apps/opsdashboard/index.html#/6d2771faa9da4a2786a509d82c8cf0f7 (last visited March 24, 2021). Over eleven thousand new cases have been confirmed statewide in the past 14 days. *Id.*  The Court takes judicial notice of these facts that are both generally known within this Court's territorial jurisdiction and that "can be accurately and readily determined from" public records "whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Both the State of Alabama and the Centers for Disease Control and Prevention recommend that individuals avoid crowded places and gatherings.  *See* Ctrs. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html; Office of Ala. Governor Kay Ivey, *Order of the State Health Officer Suspending Certain Public Gatherings Due to Risk of Infection by*

5

*COVID-19*, at 2 (as amended March 4, 2021), https://governor.alabama.gov/newsroom/2021/03/governor-ivey-amends-safer-at-home-order-to-reflect-latest-cdc-guidance. Both the State of Alabama and the Centers for Disease Control and Prevention recommend that when individuals do venture outside of the home, they maintain at least six feet of distance from individuals outside of their household. *See* Ctrs. for Disease Control, *supra*; Office of Ala. Governor Kay Ivey, *supra*, *passim.*

### B. *Waller* Factor Analysis

"Protecting the public from unnecessarily spreading a potentially fatal virus is not only a purpose the government *may* pursue; it is one it has an obligation to." Stephen E. Smith, *The Right to a Public Trial in the Time of Covid-19*, 77 WASH. & LEE L. REV. ONLINE 1, 6 (2020). In light of the pressing health and safety concerns posed by an open trial, the Court finds that it has advanced an overriding interest. This interest is likely to be prejudiced without closure because trial participants may not be able to focus on their important tasks at hand if they are worried about this Court's ability and commitment to protect their safety and the safety of their family members. These measures are also necessary to reduce, as much as reasonably possible, the risk that trial could be interrupted by the illness of a participant.

The Court further finds that the plan to close trial proceedings to spectators, except for the Defendant's family members, while making the trial available for

viewing through a live video stream in another courtroom and on the Court's website is not broader than necessary to protect the court's interest.

> A COVID closure is categorically 'no broader than necessary,' and is the only 'reasonable' response to the government interest in public health. A courtroom is a physical space, with physical limits. It is measurable in square feet. If a group of people wants to honor the social distancing regimen while occupying that space, it can do so only in certain numbers. This requires the exclusion of people beyond those numbers.

Smith, 77 WASH. & LEE L. REV. ONLINE at 10.

While this Court has considered the alternative of allowing a limited number of other spectators in the courtroom, with household groups spaced out at least six feet apart, the Court finds that this alternative is unreasonable at present, given the high number of new COVID cases (260) confirmed in Montgomery County over the past two weeks. Ala. Dep't of Pub. Health, *Alabama's COVID-19 Data and Surveillance Dashboard: Montgomery County*, https://alpublichealth.maps.arcgis.com/apps/opsdashboard/index.html#/6d2771faa9da4a2786a509d82c8cf0f7 (last visited March 24, 2021). Given the extensive community spread of this virus and the uncertainty that remains as to how it is transmitted, the Court finds that each additional person permitted in the courtroom poses an additional, unjustified safety risk to the trial participants and to the public. This alternative is unreasonable due to the possibility of severe illness from COVID-19 and due to the public's ability to view the proceedings via video broadcast.

The Court takes seriously its special responsibility to protect the members of the jury, who have proudly presented themselves during a national crisis to carry on one of the nation's most sacred civic duties. Diligent efforts have been undertaken to prepare the Montgomery court facilities for this trial. These efforts have included questioning prospective jurors in groups that enable six feet of distance between individuals; displaying most evidence electronically; erecting plexiglass shielding in the courtroom to provide barriers in front of the witness stand, courtroom deputy, and jury box; spreading members of the petit jury across the jury box and well; sequestering jurors during each day's proceedings so that they do not disperse into the community and risk infection during daytime meals; and moving juror deliberations from the smaller jury deliberation room to a large courtroom. The Court will not undermine its own precautions. The Court's response is narrowly tailored to protect, as much as reasonably possible, the interests that the public and the Defendant have in assuring "that established procedures are being followed and that deviations will become known." *Press-Enter. Co.*, 464 U.S. at 508.

In the context of a COVID closure, the final *Waller* factor, adequate findings to support the closure, is easily satisfied.

> The public health crisis the world is presently enduring may be judicially noticed. Once the court takes notice of the public health crisis, resulting findings flow therefrom, naturally. Acting to reduce the spread of the virus is an indisputable "overriding interest." Maintaining social distance or separation is the necessary means of furthering that interest, and no reasonable alternatives are available.

Smith, 77 WASH. & LEE L. REV. ONLINE at 11.

Because these findings would support a full closure, the Court finds that they necessarily support a partial closure, which requires a substantial reason to justify closure. *Judd*, 250 F.3d at 1315.

Ultimately, "it is by now a truism that 'while the Constitution protects against invasions of individual rights, it is not a suicide pact.'" Smith, 77 WASH. & LEE L. REV. ONLINE at 15 (quoting *Terminiello v. City of Chicago*, 337 U.S. 1, 37 (1949) (Jackson, J., dissenting)). It is ORDERED that the Court *sua sponte* excludes in-person spectators except for the Defendant's family members.

DONE, this 25th day of March, 2021.

                                      /s/ R. Austin Huffaker, Jr.
                                  R. AUSTIN HUFFAKER, JR.
                                  UNITED STATES DISTRICT JUDGE